IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Case Nos. 3:18cr48; 3:06cr494

JOHN JASON MORGAN,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant John Jason Morgan's Motion for Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motion"). (ECF No. 56; Case No. 18cr48; ECF No. 170, Case No. 3:06cr494.)[1] The United States responded in opposition (the "Opposition"), (ECF No. 60), and Morgan replied, (ECF No. 61). The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion for Compassionate Release.

## I. Background

Morgan's current 100-month sentence arises from a 2006 conviction and a 2018 conviction. Regarding the 2006 conviction, "before October 1, 2005, and continuing through March 20, 2007," Morgan and his coconspirators arranged for shipments of methamphetamine to arrive from Texas by common carrier into Richmond, Virginia. (Presentence Report ("PSR") ¶ 39, ECF No. 32.) Once the shipments arrived, Morgan and his coconspirators would

---

[1] Counsel for Morgan filed the same Motion in Case No. 3:08cr48 and Case No 3:06cr494. The United States similarly filed a consolidated opposition, (see ECF No. 60; Case No. 3:18cr48; ECF No. 175, Case No. 3:06cr494), and Morgan filed a consolidated reply, (see ECF No. 61; Case No. 3:18cr48; ECF No. 176, Case No. 3:06cr494). For ease of reference, the Court refers to the ECF numbers in Case Number 3:08cr48.

"redistribute[] the methamphetamine throughout the Richmond metropolitan area," and "package money and send money to [their] source of supply." (*Id.*) On January 24, 2008, Morgan was convicted of conspiring to distribute and possess with intent to distribute methamphetamine in Case No. 3:06cr494, for which the Court sentenced him to 186 months' imprisonment and 5 years of supervised release. (PSR ¶ 39, ECF No. 32.) In November 2014, Morgan completed that prison term and began serving his five-year supervised release term. (PSR 13.)

While on supervised release, Morgan completed outpatient treatment for substance abuse but continued to test positive for amphetamines and methamphetamines on multiple occasions in 2015 and 2016. (*Id.*) On November 9, 2016, Morgan was convicted of violating his conditions of supervised release, but the Court continued his sentencing to allow him the opportunity to complete inpatient treatment. (*Id.*) Ultimately, Morgan was discharged from the inpatient program after submitting an unverified urine sample to program staff. (*Id.*) After failing to appear at two probation appointments in August 2017, Morgan was arrested "on a new charge of Manufacture or Distribute Schedule I or II Drug on September 22, 2017." (*Id.* 14.)

Morgan's conduct on September 22, 2017 forms the basis of the indictment in Case No. 3:08cr48. On September 22, 2017, Richmond Police Department officers encountered Morgan in a convenience store parking lot and discovered there was an active warrant for his arrest. (*Id.* ¶ 5.) The officers searched Morgan's person and recovered "approximately 4.5 grams of methamphetamine including packaging, a rolled-up piece of currency, and keys to a black safe" in Morgan's truck. (*Id.*) On September 23, 2017, the following day, officers obtained and executed a warrant to search Morgan's truck. (*Id.*) They seized "approximately 19.38 grams of methamphetamine; approximately 1.9642 grams of cocaine including packaging; two hydromorphone pills; 0.1779 grams of heroin including packaging; small empty zip-lock baggies

of various sizes; two scales; drug paraphernalia; and documents belonging to John Morgan" from the truck's safe. (*Id.*) "The total weight of the controlled substances" in addition to the drug paraphernalia seized "were inconsistent with personal use and consistent with the intent to distribute the controlled substances." (*Id.*)

Following a bench trial on September 11, 2018, the Court found Morgan guilty of one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (J. 1, ECF No. 36.) Prior to sentencing, the probation office prepared a Presentence Report ("PSR") for Morgan. In the PSR, Probation Officer Susan A. Hushour[2] noted that the 19.38 grams of methamphetamine "was determined to be at least 11 grams of pure methamphetamine." (*Id.* ¶ 6.) Although there were "additional quantities of drugs seized from [Morgan's] vehicle, . . . the net weight of these substances is unknown and has not been used in the guideline calculations." (*Id.*) Based on the 11.22 grams of actual methamphetamine, the guidelines established a base offense level of 24. (*Id.* ¶ 12.) Officer Hushour determined that Morgan "demonstrated acceptance of responsibility for the offense," and recommended decreasing Morgan's offense level by 2 levels, resulting in a Total Offense Level of 22. (*Id.* ¶¶ 19–20.) With an Offense Level of 22 and a Criminal History Category of III, Morgan faced a Guidelines range of 60 to 63 months' imprisonment. (*Id.* ¶¶ 83–84.)

On December 13, 2018, the Court sentenced Morgan to 63 months of imprisonment followed by 5 years of supervised release in Case No. 3:08cr48, (ECF No. 57), and 37 months of imprisonment because of his supervised release violations in Case No. 3:06cr494, (ECF No. 60).

---

[2] While Officer Hushour is the signing officer of the Presentence Report, she notes at paragraph 20 that "[p]ortions of the remainder of this report were taken from the presentence report prepared for the Defendant's sentencing" in his prior case, Case No. 3:06cr494, in which he was charged with one count of Conspiracy to Distribute and Possess with the Intent to Distribute 50 Grams or More of Methamphetamine. (PSR ¶ 20.)

3

As a result, the Court sentenced Morgan to a cumulative 100 months of imprisonment. Morgan timely filed an appeal. (ECF No. 47.) On March 26, 2020, the United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment. (*Id.*)

The record reflects that Morgan is currently housed at Petersburg Low FCI. (Mot. 1.) The Bureau of Prisons ("BOP") states that Morgan will be released on October 27, 2024. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/. As of May 3, 2021, the BOP reports that 217 inmates at Petersburg Low FCI have tested positive for COVID-19. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.[3]

On August 26, 2020, Morgan submitted a request for compassionate release to the Warden of Petersburg Low FCI. (ECF No. 14.) On September 15, 2020, the Warden denied Morgan's request. (*Id.*) Morgan then filed his request with this Court on October 13, 2020 as a *pro se* plaintiff. (*Id.*) On December 6, 2020, Morgan's counsel filed the instant Motion for Compassionate Release. (Mot., ECF No. 56.)

In his Declaration accompanying his Motion for Compassionate Release, Morgan describes his circumstances at Petersburg Low FCI:

> On August 17, 2020, the satellite camp went on a complete quarantine. . . . Within days, a group of 60 inmates tested positive and they were removed from the quarantine housing unit and put in isolation but were then allowed to return inside the quarantine unit to retrieve personal items further exposing inmates in the unit to the virus. . . . There are no enclosed sleeping areas in the housing unit at this camp. There are partition walls that separate an area approximately 6' x 8 ½' . . . Deion Wright is housed in the partition adjacent to my partition. Mr. Wright was called by the unit officer and told that he tested positive for Covid-19 and to go to isolation and that medical had 'forgotten' to take him with the others. . . . six days after he was tested. . . . During this time . . . [t]here was no physical exercise allowed. Most of this time I was served boxed meals and bagged lunches. . . . I was served spoiled food and . . . [a]t times, inmates received only one 16 ounce bottle

---

[3] The same website reports that as of May 4, 2021, there are zero active confirmed COVID-19 cases among inmates and fourteen active confirmed COVID-19 cases among staff at Petersburg Low FCI. *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.

> of water per day. . . . Unit staff advised me that I will have to get water from the bathroom sink for drinking purposes. The water fountains are temporarily shut down . . . this prison expects me to drink from a sink that is used for hygiene purposes . . . .

(ECF No. 56-2.) Morgan asserts that he "is particularly susceptible to COVID-19 and is more likely to suffer dire consequences from the virus due to his obesity, sleep apnea, and long history of smoking." (Mot. 2.) Morgan provided BOP medical records to the Court with his *pro se* filing showing that on January 8, 2019,[4] his BMI measured 30.3 and he weighed 236.4 pounds. (ECF No. 49 at 8–9.)

In addition to his medical conditions, Morgan contends that he is "undergoing the process to determine if he is the father of a young child whose mother died last December—his only child if confirmed." (Mot. 25–26.) Morgan avers that upon release he plans to "live with his father and stepmother at their home in Chesterfield County" where he can safely quarantine and work for a local roofing company. (Mot. 27.)

The United States opposes Morgan's request for compassionate release, arguing that even though Morgan's "sleep apnea, [] body mass index in excess of 30 and [the fact that he] has been a smoker for 30 years . . . could place him at a higher risk of complications due to COVID-19," his "medical records show that his medical conditions can be managed in prison" and thus, are not "of substantial severity and irremediability as required." (Opp'n 10, ECF No. 60.) Additionally, the United States contends that Morgan has "not shown that his prison facility is at heightened risk of a coronavirus outbreak," as at the time of filing its opposition, there were no active cases of COVID-19 and the death rate was zero. (*Id.* 11.) The United States critiques Morgan's release plan not only because comparatively, Chesterfield County has more COVID-

---

[4] Morgan notes that he requested updated medical paperwork but was unable to obtain it "due to the current quarantine." (ECF No. 49 at 8.)

19 cases and a "death rate of 44.8 per 100,000 population," or 156, which is "substantially" higher than the Petersburg Low FCI death rate of zero, (*id.*), but also because it could increase the risk of Morgan's exposure and would be "placing his [72-year old] father at a substantially greater risk of contracting the virus," (*id.* 12).

Furthermore, the United States asserts that the statutory sentencing factors weigh against Morgan's release because Morgan's "criminal history and his failure to comply with the law and this Court's orders prove" he is a "danger to society," who was not previously deterred by the "threat of being returned to prison." (*Id.* 15.) Even though he has "not incurred any disciplinary infractions since arriving at FCI Petersburg Low," the United States points to Morgan's "30-year history of committing crimes and violating the Court's trust" as a reason to deny compassionate release. (*Id.*)

In reply, Morgan argues that while acknowledging his "prior criminal conduct was serious," he has been "committed to changing his path forward for the better," even while in local custody. (Reply 17, ECF No. 61.) In support of his commitment to betterment, Morgan points to his voluntary enrollment in "dozens of hours" of "educational and rehabilitative programming," in addition to his "hard work" in "a trusted position in UNICOR at both FCI Butner and FCI Petersburg." (*Id.* 17–18.) Morgan also states that "[t]he prison system has already determined that he poses a low risk to recidivate and has placed him a[t] minimum security camp," in addition to the fact that "[u]nlike his prior federal incarceration, he has not had a single disciplinary infraction." (*Id*. 18.)

Since the filing of Morgan's request, the BOP has made progress in making the COVID-19 vaccine available to inmates. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/. As of May 3, 2021, the BOP reports that 1417 inmates at

Petersburg FCC have been fully inoculated. *See id.* The record does not reflect whether Morgan has received a COVID-19 vaccine.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[5] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir.

---

[5] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

A. **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No.

3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B.  Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[6]

---

[6] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a

9

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 applies only to motions filed by the director of the BOP and does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United*

---

term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
    (1) (A) extraordinary and compelling reasons warrant the reduction; or
    (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
    (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

*States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

      **C.    Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Morgan has sufficiently exhausted his administrative remedies.

Next, the Court finds that although Morgan's health conditions raise concerns about his well-being should he contract COVID-19 while incarcerated, and the United States concedes that Morgan "does in fact have sleep apnea, a body mass index in excess of 30 and has been a smoker for 30 years, all of which could place him at higher risk of complications due to COVID-19," (Opp'n 10), the potential for such complications do not constitute extraordinary and compelling circumstances that render Morgan eligible for compassionate release consideration.

Morgan cannot rely merely on "a fear of contracting COVID-19" as grounds for compassionate release. *United States v. Miller*, No. 3:16cr121, 2020 WL 4547809, at *5 (E.D.

Va. Aug. 6, 2020) (quoting *United States v. White*, No. 3:18cr61, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020)). Instead, for his health conditions to qualify as "extraordinary and compelling reasons for compassionate release," Morgan must demonstrate "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

Morgan states that he suffers from "obesity and obstructive sleep apnea" in addition to having smoked for "three decades until his incarceration." (Mot. 1.) While Morgan provides medical records from January 8, 2019, assessing him as obese, the records do not indicate the existence of his sleep apnea, or support his thirty-year history of smoking other than briefly noting "tobacco abuse" and "history of smoking." (ECF No. 49.) Because the limited medical records provided predate the onset of the pandemic, the Court does not expect to see Morgan's particularized susceptibility to the disease explicitly stated. (*See* ECF No. 49.) However, the records do not establish that Morgan has been hospitalized for, or suffered any other adverse effects from, his obesity, sleep apnea, or history of smoking.[7] (*See id.*)

In any event, even if Morgan's medical conditions entitled him to compassionate release consideration, the Court finds that the relevant statutory sentencing factors do not support immediate release. Upon review, Morgan's criminal history and underlying conviction demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. When Morgan committed the

---

[7] The PSR similarly does not address these conditions, but rather states that Morgan's "overall health is good," noting only that Morgan expressed he has "chronic back pain[ and] has plantar fasciitis," (PSR ¶ 62), conditions that Morgan does not argue entitle him to compassionate release in the instant Motion.

underlying offense, he was forty-six years old and had already committed multiple offenses as an adult. (PSR 2, 7–14.)

Turning to other § 3553(a) factors, the Court acknowledges that Morgan, now forty-nine years old, has served about half of his sentence and will be released in approximately three and a half years. (*See* Mot. 1.) Upon release, Morgan will begin to serve a five-year supervised release term. (ECF No. 57.) Although the Parties confirm that Morgan has not committed any disciplinary infractions during his current federal incarceration, his previous 30-year criminal history suggests that the Court should consider public safety and whether his sentence promotes respect for the law.[8] Morgan's sentence derives in part from his continued distribution of drugs while on supervised release for a conviction of conspiring to distribute and possession with intent to distribute methamphetamine for which he had received a 186 month sentence. The Court finds that while Morgan's sentence adequately deters criminal conduct, the seriousness of Morgan's offense and the need to both promote respect for the law and to protect the public outweigh immediate release. *See* 18 U.S.C. § 3553(a)(2).

Morgan further asserts that his Motion should be granted because he has engaged in BOP programming and has taken numerous steps to improve himself while incarcerated, including his voluntary enrollment in in "dozens of hours" of "educational and rehabilitative programming," in addition to his "hard work" in "a trusted position in UNICOR at both FCI Butner and FCI Petersburg." (Reply 17–18.) In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the

---

[8] As the United States summarizes, Morgan's "criminal history starts when he was 19 years old with possession of marijuana and a concealed weapon," and continues with a larceny conviction, two DUI convictions, a resisting arrest conviction, a distribution of cocaine conviction and accompanying 20-year suspended sentence, and during that suspended sentence, a conspiracy to distribute more than 50 grams of methamphetamine conviction. (Opp'n 14–15.)

district court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397.

While Morgan's participation in rehabilitative programs and work during his time incarcerated are commendable, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his convictions and the time remaining on his sentence. Morgan displays progress in his rehabilitation and this Court commends him for doing so. Congress, however, has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In sum, the Court concludes that the current record does not justify Morgan's immediate release from federal imprisonment.

## IV.  Conclusion

For the reasons explained above, the Court will deny the Motion.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

M. Hannah Lauck
United States District Judge

Date: May 4, 2021
Richmond, Virginia